UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BAMM OH, *Plaintiff*, | : : : | |
| v. | : : | CASE NO. 3:25-CV-1811 (KAD) |
| WARDEN DORRITY, *et al.*, *Defendants*. | : : : | DECEMBER 31, 2025 |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge:

Plaintiff Bamm Oh is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"), and is currently housed at the MacDougal-Walker Correctional Institution ("MacDougal").[1] He filed the instant civil rights action *pro se* under 42 U.S.C. § 1983 ("Section 1983") against the following DOC employees who worked at Corrigan-Radgowski Correctional Center ("Corrigan") on and around September 25, 2025: Warden "Dorrity" (hereinafter, "Dougherty"),[2] Lieutenant Melton, Correction Officer Vallejo, Nurse Heather Roddy, Medical Director Radior, and Nurse Amanda. *See* Compl., ECF No. 1. Broadly speaking, Plaintiff alleges that he was subjected to excessive force, and subsequently did not receive medical attention for a serious finger injury that he sustained during the use of force incident. *Id.*

Though the Complaint does not specify whether Plaintiff is suing Defendants in their individual and/or official capacities, the Court observes that Plaintiff only seeks money damages from Defendants. *See id.* at 15–17. Accordingly, on initial review, the Court has considered

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Publicly available information on the DOC website indicates that Plaintiff was sentenced on August 8, 2024. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=261810.

[2] The Court takes judicial notice of information on the DOC website showing that the Warden of Corrigan is Daniel Dougherty. Thus, the Court refers to Warden Dougherty in this order. *See* https://portal.ct.gov/doc/facility/corrigan-radgowski-cc.

only whether Plaintiff may proceed on his Section 1983 claims against Defendants in their individual capacities.[3]

**Allegations**

The Court does not include herein all of the allegations from the Complaint, and instead summarizes the facts to provide context for this initial review.[4]

On September 25, 2025, Plaintiff was confined in the Fox Unit at Corrigan, following a non-violent incident. Compl. at 8. While he was handcuffed in the sallyport of the Fox Unit with Lieutenant Melton, Plaintiff was threatened by correctional officers. *Id.* After Plaintiff turned his head to say something, Lieutenant Melton sprayed him three times in the face with a chemical agent. *Id.* Plaintiff further felt his left hand—which was cuffed to his right hand—pulled aggressively. *Id.* Officer Vallejo took Plaintiff's left ring finger and bent it, causing him agonizing pain. *Id.*

Plaintiff told Lieutenant Melton that Officer Vallejo was trying to hurt him by forcing his finger back, but Lieutenant Melton took no action. *Id.* Plaintiff continued to yell: "[t]he Officer

---

[3] On December 1, 2025, Plaintiff filed a motion seeking injunctive relief in the form of a Court order directing the DOC Medical Department to provide him within proper medical treatment for his injured finger. *See* ECF No. 12. On December 4, 2025, the Court denied Plaintiff's motion, insofar as Plaintiff had "wholly failed to demonstrate his entitlement to such an injunction under the applicable standards for granting injunctive relief," and otherwise sought injunctive relief against the DOC Medical Department, who was not named as a Defendant in connection with any of Plaintiff's underlying claims. *See* ECF No. 14. The Court additionally observes herein that even if Plaintiff had sought injunctive relief against any of the named Defendants in their official capacities, such claims would fail insofar as Plaintiff is now housed at MacDougal, and it is well-settled that "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).

[4] Although Plaintiff does not identify any state law causes of action, the Court limits its initial review of the Complaint to federal law claims, because the purpose of an initial review order pursuant to 28 U.S.C. § 1915A is to conduct a prompt initial screening to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims, then the Court would decline to exercise supplemental jurisdiction over any potentially identifiable state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying (or potential) state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, upon initial review, the Court's determination that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any such claim(s) by way of a motion to dismiss or motion for summary judgment.

is breaking my finger." *Id.* Several other correctional officers took no action to stop Officer Vallejo from hurting Plaintiff. *Id.* Instead, officers punched Plaintiff in the back and forced his head into the wall. *Id.* at 8–9. Plaintiff continued to ask Lieutenant Melton to stop Officer Vallejo from breaking his finger. *Id.* at 9. Nevertheless, Officer Vallejo broke Plaintiff's finger, and subsequently provided Plaintiff with no medical assistance. *See id.* at 12.

Plaintiff was later taken to the Admitting and Processing Room ("A&P Room"), and then taken to a cell for a strip search prior to his placement in segregated housing. *Id.* In the A&P Room, Nurses Amanda and Heather instructed Plaintiff to put his hands up so they could look at his injured hand. *Id.* Nurse Heather told Plaintiff that Dr. Radior did not believe his finger was injured, but Dr. Radior did not look at Plaintiff's left hand. *Id.* at 9–10. While Nurse Amanda advised Plaintiff that he would have an x-ray the next day, Plaintiff never received any further medical attention. *Id.* at 9–10.

Approximately two hours later, Plaintiff was brought to the Restrictive Housing Unit ("RHU") at Corrigan. *Id.* There, Plaintiff informed Warden Dougherty that Officer Vallejo had broken Plaintiff's finger. *Id.* Warden Dougherty responded: "[t]hat[']s what you get." *Id.* Plaintiff saw Warden Dougherty four times while he was in the RHU, and each time, Warden Dougherty laughed at Plaintiff's request for medical treatment. *Id.* at 11.

Plaintiff was transferred to MacDougal on October 6, 2025. *Id.* at 10. There, during a routine medical appointment, Plaintiff informed the medical provider about his injured left ring finger. *Id.* The medical provider ordered x-rays for Plaintiff's finger, which were taken on October 10, 2025. Thereafter, Plaintiff was informed that his left ring finger was fractured. *Id.* He received a splint and was advised that he needed to see an orthopedic doctor. *Id.*

**Standard of Review**

The Court must review prisoner complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In doing so, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[ ]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Discussion**

Liberally construed, the Complaint asserts the following Section 1983 claims, each arising under the Eighth Amendment: (1) excessive force against Defendants Lieutenant Melton and Officer Vallejo; (2) failure to protect/intervene against Defendant Lieutenant Melton; and (3) deliberate indifference to medical needs against Defendants Dr. Radior, Nurse Amanda, Nurse Heather, and Warden Dougherty. As set forth below, the Court has considered whether the Complaint plausibly alleges such claims against Defendants in their individual capacities, for damages.

<u>Excessive Force</u>

First, the Complaint asserts that Lieutenant Melton and Officer Vallejo each subjected

4

Plaintiff to excessive force during the incident in the Fox Unit sallyport on September 25, 2025.

The use of excessive force against a prisoner can constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992); *accord Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010) (*per curiam*). The "core judicial inquiry" is not "whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). To state a claim for use of excessive force, a plaintiff must show, objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (internal quotation marks omitted) (citing *Hudson*, 503 U.S. at 8). A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9–10). It is the force used, not the injury sustained, that "ultimately counts." *Id.* A malicious use of force constitutes a *per se* Eighth Amendment violation because "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (quoting *Hudson*, 503 U.S. at 9).

A plaintiff must also allege facts showing that, subjectively, the defendant acted maliciously or sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Hudson*, 503 U.S. at 6–7 ("[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). To evaluate the defendant's conduct, the Court considers various factors including the extent of the injuries and the mental state of the inmate; "the need for application of force; the correlation between that need and the amount of

force used; the threat reasonably perceived by the defendant[]; and any efforts by the defendant[] to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks omitted) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

Here, Plaintiff claims that while he was handcuffed in the Fox Unit sallyport, and without provocation on his part, Lieutenant Melton sprayed him in the face with chemical spray, and Officer Vallejo unnecessarily and perhaps intentionally broke his finger. Accepting these allegations as true, the Complaint suggests that Plaintiff did not pose a security risk, and that Defendants Melton and Vallejo applied force that went beyond what was necessary to maintain the safety and security of the facility. *See Wilkins*, 559 U.S. at 37. Accordingly, Plaintiff has alleged plausible Eighth Amendment excessive force claims against Lieutenant Melton and Officer Vallejo.

Additionally, to the extent that the Complaint alleges Lieutenant Melton had a clear opportunity but failed to prevent the excessive force used by other officers, including Officer Vallejo, Plaintiff may also proceed on a claim against Lieutenant Melton for failure to intervene to prevent the excessive use of force. *See Sloley v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

<u>Deliberate Indifference</u>

The Complaint further asserts that Defendants Dr. Radior, Nurse Amanda, and Nurse Heather were deliberately indifferent to Plaintiff's medical needs.

To proceed on an Eighth Amendment deliberate indifference to medical needs claim, the plaintiff-prisoner must plausibly allege that: "(1) objectively, the alleged deprivation of medical

6

care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin*, 467 F.3d at 279–80). To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). From there, the plaintiff-prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *Dunbar v. Dep't of Correction*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at *5 (D. Conn. Jan. 10, 2023). Indeed, a plaintiff must allege that a prison official was aware of a substantial risk that the plaintiff would be seriously harmed if the prison official did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*). "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138 (citation omitted).

Plaintiff alleges that Dr. Radior, Nurse Amanda, and Nurse Heather acted with deliberate indifference to his serious medical needs following the use of force incident. More specifically, Plaintiff claims that these Defendants collectively failed to diagnose his broken finger, and provide treatment accordingly. But even assuming that Plaintiff's broken finger was objectively sufficiently serious, the Complaint fatally fails to allege facts supporting the inference that any of these Defendants "act[ed] with a sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotations omitted). Indeed, insofar as Plaintiff alleges that Nurse Heather told him that Dr. Radior did not even believe (perhaps incorrectly) that his finger was broken, it is all but impossible to infer that these Defendants knew their collective

7

inaction would thereafter result in serious harm to Plaintiff. At most, Plaintiff appears to assert that Defendants failed to properly evaluate his finger injury. Yet, "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law," and so "not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003)). And here, Plaintiff's allegations sound only in negligence and/or medical malpractice, neither of which is sufficient to support a claim of deliberate indifference. *See Jusino v. Gallagher*, No. 3:21-CV-689 (SRU), 2022 WL 2078159, at *4 (D. Conn. June 9, 2022) ("Negligence—which might support a claim for medical malpractice—does not rise to the level of deliberate indifference and is not cognizable under [S]ection 1983.") (citing *Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012)); *see also Harris v. Westchester Cty. Med. Ctr.*, No. 08-CV-1128 (RJH), 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) ("[W]ithout more, allegations of negligent treatment and misdiagnosis do not state a cause of action under the Eighth Amendment.") (cleaned up). Accordingly, Plaintiff's deliberate indifference to medical needs claims against Dr. Radior, Nurse Amanda, and Nurse Heather must be dismissed.

    <u>Warden Dougherty – Supervisory Liability</u>

Finally, Plaintiff seeks to hold Warden Dougherty, a supervisory official, liable for his alleged deliberate indifference to Plaintiff's medical needs.

In *Tangreti v. Bachmann*, the Second Circuit clarified that "there is no special rule for supervisory liability." 983 F.3d 609, 618 (2d Cir. 2020). Instead, a plaintiff proceeding with Section 1983 claims "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). The violation must be established against the supervisory official directly. *Id*. Indeed,

for a plaintiff to sustain a constitutional claim for liability against a supervisory government official, the defendant official "—and not merely their subordinates—must have engaged in unconstitutional conduct." *Reynolds v. Arnone*, No. 3:13-CV-1465 (SRU), 2025 WL 974843, at *11 (D. Conn. Mar. 31, 2025). Put differently, supervisory officials cannot be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*.[5] *Tangreti*, 983 F.3d at 616; *see, e.g.*, *Calhoun v. Quiros,* No. 3:23-CV-715 (SVN), 2024 WL 2846886, at *8 (D. Conn. June 5, 2024) (dismissing supervisory liability claim premised on information passed up the chain of command or shared with supervisors).

Here, the Complaint alleges that Warden Dougherty repeatedly laughed at Plaintiff's requests for medical attention for his finger, which remained broken and untreated during his time in the RHU at Corrigan. For purposes of initial review, the Court assumes that Plaintiff's broken finger, which caused him "agonizing pain," was a sufficiently serious injury. *See Hill*, 657 F.3d at 122. Moreover, though Plaintiff's allegations about his interaction(s) with Warden Dougherty are thin, they nevertheless plausibly suggest that Warden Dougherty consciously ignored Plaintiff's obvious need for medical attention. *See Spavone*, 719 F.3d at 138. Thus, Plaintiff may proceed on his deliberate indifference to medical needs claim against Warden Dougherty.

**ORDERS**

In light of all of the foregoing, the Court enters the following orders:

(1) The Eighth Amendment claims against Dr. Radior, Nurse Heather, and Nurse Amanda are **DISMISSED**. The Clerk of Court is instructed to terminate Dr. Radior, Nurse Amanda, and Nurse Heather as Defendants in this action. The case shall proceed to service of process on all

---

[5] For these reasons, even liberally construed, the Complaint cannot proceed on a supervisory liability claim against Warden Dougherty based on his subordinate staff's use of excessive force or deliberate indifference to Plaintiff's medical needs.

other claims consistent with this Order, to wit, Plaintiff's individual capacity claims for damages: (a) against Lieutenant Melton and Correction Officer Vallejo for their use of excessive force and against Lieutenant Melton for his failure to intervene in same; and (b) against Warden Dougherty for his deliberate indifference to Plaintiff's medical needs.

(2) The Clerk of Court shall verify the current work addresses for Lieutenant Melton, Correction Officer Vallejo, and Warden Dougherty with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a Defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file a response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **June 30, 2026**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be

found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **July 30, 2026**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d) provides that he MUST notify the Court. **Failure to do so may result in the dismissal of the case.** Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the Court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of December 2025.

                                                                */s/ Kari A. Dooley*
                                                          KARI A. DOOLEY
                                                          UNITED STATES DISTRICT JUDGE